Argued February 1, petition denied March 29, 1967

In the Matter of the Application for Admission to
the Oregon State Bar of

WILLIAM VANN CHEEK, *Petitioner.*

425 P. 2d 763

*Henry J. Camarot,* Springfield, argued the cause for petitioner. With him on the briefs were Sanders, Lively & Camarot, Springfield.

*Thomas E. Brownhill,* Eugene, argued the cause for the Oregon State Bar. With him on the brief was Vernon D. Gleaves, Eugene.

Before Perry, Chief Justice, and McAllister, Sloan, O'Connell, Goodwin, Denecke and Lusk, Justices.

PER CURIAM.

In December, 1962, William Vann Cheek applied for

admission to the bar of Oregon. He stated in his application that he was an attorney in good standing of the bar of New Mexico and had recently moved to Oregon. In July, 1963, he took the special examination given to attorneys from other states. He passed the examination, but his admission was held in abeyance pending an investigation by the Board of Bar Examiners of his moral character and general fitness.

Mr. Cheek graduated from the law school of the University of New Mexico in 1957 and was admitted to the bar of that state in August, 1957. He immediately opened an office in Alamogordo, and continued to practice there until the fall of 1960. He then moved to El Paso, Texas, where he was employed by the El Paso Natural Gas Company until the spring of 1962. In July, 1962, he moved to Eugene, where he went to work for the Lane County Escrow Service, Inc. He was so employed until January, 1963, when he became manager of Land Associates, Inc., a concern dealing in real estate contracts and loans, and insurance premium financing. Mr. Cheek is married, has five children, and is now 37 years of age.

The Board of Bar Examiners, after an investigation which was attended with some difficulty because it involved the petitioner's conduct in New Mexico, recommended that Cheek's application be denied "pending a full-scale adversary hearing" if requested by Cheek. In accordance with this recommendation, this court on October 20, 1964 denied Cheek's application, with leave to petition this court for a review of his said application and for a hearing on the question of his moral character and general fitness in accordance with the procedure prescribed by our rules.

Pursuant to that order, Cheek on November 19, 1964 petitioned this court for a review of our order

denying his application and for a hearing. The court allowed the petition, and referred the matter to the Board of Governors of the Oregon State Bar for a hearing on the petitioner's moral character and general fitness, with instructions to report its findings and recommendations to this court. The Board of Governors with the approval of this court appointed three of its members to conduct the hearing.

Before the hearing counsel for the bar served on petitioner a statement of objections listing 12 specific charges of alleged misconduct which occurred while he was practicing in New Mexico. The petitioner filed a formal answer to the statement of objections, thus forming the issues to be resolved by the hearing. Prior to the hearing the bar, by stipulation, was permitted to supplement its statement of objections by adding four charges involving petitioner's conduct while he was employed by Land Associates, Inc., between January, 1963, and March, 1965. Petitioner also filed an answer to the supplementary charges.

The trial committee of the Board of Governors held a hearing on December 10-11, 1965, and thereafter made written findings and unanimously recommended that Cheek's application for admission be denied.

Thereafter the Board of Governors reviewed the record and by the unanimous vote of the nine members participating in the decision concluded that the petitioner lacks the moral character and general fitness requisite for admission to practice law in Oregon, and recommended that his application be denied.

The matter now comes before us for *de novo* review of the record made before the trial committee. We have had the benefit of briefs and oral argument in this court.

There is little dispute in the testimony about the initial charges involving alleged misconduct occurring while petitioner practiced law in New Mexico. The question is largely one of the inferences or conclusions to be drawn from the facts. It would serve no useful purpose to recite in detail the background and petitioner's explanation of each of the 12 charges. They included issuing one or more N.S.F. checks to the county clerk in payment of filing fees; issuing one or more N.S.F. checks to the sheriff in payment of his fees, taking with him when he left Alamogordo one or more official court files and failing to return them until he was threatened with punitive action by a judge; failing to return to the county law library a quantity of law books he had taken from the library while he was practicing in Alamogordo; failing to make reasonable provision for the payment of certain debts owing when he left Alamogordo and giving the Board of Bar Examiners inaccurate information concerning some of those debts; failing to take proper care of the legal affairs of a few clients, particularly in connection with the winding-up of his practice in New Mexico; and failing to diligently and properly discharge his duties as guardian of a small estate. We think it sufficient to say that the evidence concerning this part of the case, although reflecting some discredit on petitioner, would probably not of itself warrant denying him admission to the bar of this state.

However, the four supplementary charges of misconduct present a far more serious problem. These charges involve conduct occurring between January 1, 1963 and March 24, 1965, while petitioner was employed as manager of Land Associates, Inc. Petitioner was charged with having signed the name of the president of the company to two checks without any au-

thority so to do, and with having on two occasions attempted to conceal the fact that the automobile furnished for his use had been damaged and giving his employer false information with regard thereto.

Petitioner had no authority to sign the company checks. The checks had to be signed by the bookkeeper and by one of several authorized officers. It was petitioner's practice when consummating the purchase of a mortgage or contract to obtain a check signed by the bookkeeper and then to go to the office of one of the authorized officers for the second signature. This usually involved a trip from Springfield to Eugene. Petitioner admits that on January 14, 1965 he signed the name of the company's president to a check for $3,042.92 and delivered the check in payment for a land sale contract which was assigned to the company.

The second check was in the sum of $7,251, and was delivered by the petitioner on January 25, 1965 also in payment for a land sale contract. Petitioner does not admit that he signed the president's name to the second check, but the evidence weighs heavily against him. Petitioner did not tell anyone that he had signed the president's name to these checks, and the unauthorized signatures were not discovered until after petitioner was discharged. There was no charge or evidence that petitioner profited personally from either of these transactions. It will be noted that these checks were signed after petitioner's application for admission had been preliminarily denied by our order of October 20, 1964.

With regard to the automobile, it was charged that in April, 1964, while in petitioner's custody the car was damaged to the extent of $152.60. Petitioner reported neither the accident nor the damage to his

employer. The officers of the company within a few days discovered that the car had been damaged. Petitioner was censured for not reporting the matter, but was reimbursed for the cost of repairing the damage. A few months later the car was again involved in an accident while in the custody of petitioner and again petitioner did not report the accident or damage to his employer. He had the damage repaired at his own expense and gave the company officers false excuses for not having the automobile at work. These charges with regard to the automobile are admitted by petitioner.

We must finally determine whether in our judgment, based on the record submitted to us, petitioner possesses the requisite moral character and general fitness to practice law in Oregon. We agree with the trial committee and the Board of Governors that he does not. The petition for admission to the bar of this state is denied.